IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| JOHN MCDOWELL,<br><br>       Plaintiff,<br><br>   v.<br><br>ROY ODUM; RODNEY FOULKS; and MARCUS MIKELL,<br><br>       Defendants. | CIVIL ACTION NO.: 6:19-cv-24 |

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Roy Odum, Rodney Foulks, and Marcus Mikell's unopposed Motion for Partial Summary Judgment. Doc. 26. The Clerk of Court mailed a Notice to Plaintiff advising him Defendants filed a Motion for Summary Judgment and that a response must be filed by October 25, 2021. Doc. 28. The Court's Notice further advised Plaintiff:

1. If you do not timely respond to this motion . . ., the consequence may be the Court will deem the motion unopposed, and the Court may enter judgment against you;

2. If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence; and

3. If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

Id. This Notice was not returned to the Clerk of Court as undeliverable to Plaintiff. The time for Plaintiff to file a response has elapsed, and Defendants' Motion is now ripe for adjudication.

For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Partial Summary Judgment and **DISMISS** Plaintiff's claims for excessive force against all Defendants and Plaintiff's failure to protect claim against Defendants Odum and Foulks. Plaintiff's failure to protect claim against Defendant Mikell remains pending.

## PROCEDURAL HISTORY

Plaintiff filed this action asserting claims under 42 U.S.C. § 1983 based on events occurring while he was incarcerated at Georgia State Prison in Reidsville, Georgia ("GSP"). Doc. 1. After conducting frivolity review, the Court permitted Plaintiff to proceed with his Eighth Amendment excessive force and failure to protect claims against Defendants Odum, Foulks, and Mikell. Doc. 8. Plaintiff alleges Defendants Mikell and Foulks used excessive force on September 5, 2018, when attempting to handcuff Plaintiff. Doc. 1 at 8–9. Plaintiff explains Defendants were trying to house him with a gang-affiliated inmate, who posed a threat to Plaintiff's safety and Plaintiff told Defendants as much. Id. at 9. Defendants then ordered Plaintiff to be sprayed and housed Plaintiff with the gang-affiliated inmate. Id. Based on these events, Plaintiff brings a claim for excessive force against Defendants. Id. at 14.

The next day, Plaintiff again told Defendant Mikell he feared for his life because his cellmate was gang-affiliated. Id. at 10. However, Defendant Mikell dismissed Plaintiff's concerns. Id. Plaintiff avers Defendant Odum was also aware of the threat gang members posed to Plaintiff. Id. at 12–13. Later that day, Plaintiff's cellmate raped him at knifepoint. Id. at 10. Based on the September 6, 2018 assault, Plaintiff brings an Eighth Amendment failure to protect claim against all Defendants. Id. at 14–15.

Defendants move for summary judgment as to Plaintiff's excessive force claim for all Defendants and Plaintiff's failure to protect claim for Defendants Odum and Foulks.[1]  Doc. 26. Plaintiff has not responded to Defendants' Motion for Summary Judgment.

## UNDISPUTED MATERIAL FACTS

At the time relevant to Plaintiff's Eighth Amendment claims, he was incarcerated in the G 4 Dormitory Cell #26 at GSP.  Doc. 26-1 at 1.  Defendants all worked at GSP.  Defendant Odum was a Unit Manager, Defendant Foulks was a Lieutenant, and Defendant Mikell was a Sergeant.  Id.

### A. Facts Related to the September 5, 2018 Use of Force

On September 5, 2018, Defendant Mikell was assigned to move Inmate Stone to the G-building so that he would be housed with Plaintiff.  Id. at 2.  Plaintiff was instructed to come to the cell door to be handcuffed.  Id. at 4.  Plaintiff refused to cooperate or be handcuffed.  Id. at 2–3, 4.  Before any force was used, Defendant Mikell received authorization for use of force from Warden Brian Adams.  Id. at 4.  Defendant Mikell then assembled a use of force team consisting of himself, CERT Officers Jackson, Powell, and Cook, and CO II Boone.  Id.  After the use of force team assembled, Plaintiff was again ordered to turn around and be handcuffed.  Id. at 5. Plaintiff was told that if he refused to cooperate, force would be used.  Id.  Plaintiff again refused these orders and blocked his handcuff flap with a mattress.  Id.  As a result of Plaintiff's lack of cooperation, CERT Officers Powell and Cook used a ram to push Plaintiff and the mattress away from the cell door while CERT Officer Jackson deployed pepper spray into the cell.  Id. at 3, 5.

---

[1] To be clear, Defendant Mikell has not moved for summary judgment on Plaintiff's failure to protect claim.  Doc. 26.

After the pepper spray took effect, Plaintiff complied, was handcuffed, and was immediately escorted to GSP's medical unit for an assessment. Id. at 3. After the assessment, Plaintiff was cleared by the medical unit to return to his cell. Plaintiff did not suffer any injury besides the pain and discomfort typically associated with pepper spray and did not request or receive any other medical treatment. Id. at 5. Before returning to his cell, Plaintiff was first taken to a shower area to decontaminate. Id. at 3. Plaintiff was able to get the spray off in the shower. Id. at 5. When Plaintiff returned to his cell after showering, he complied with orders and allowed Inmate Stone to enter his cell. Id. at 3.

Defendant Foulks was also present in the G-building during this time. Id. at 2, 4. Defendant Foulks' involvement was limited to cleaning Plaintiff's cell after pepper spray was deployed and removing Plaintiff's handcuffs when Plaintiff returned to his cell. Id. at 3–4. Following the altercation on September 5, 2018, Defendant Odum reviewed the use of force incident report. Id. at 2. Defendant Odum had no other involvement in the September 5, 2018 incident.

    **B.**    **Facts Relevant to Plaintiff's Failure to Protect Claim**

When officers arrived at Plaintiff's cell to move Inmate Stone in with him on September 5, 2018, Plaintiff informed Defendants Mikell and Foulks that his life was in danger if he were to be housed with a gang member, including Inmate Stone. Id. at 5. Plaintiff did not provide any further information to Defendants Mikell and Foulks; specifically, Plaintiff did not explain whether he and Inmate Stone had any prior altercations, whether Inmate Stone ever assaulted or sexually assaulted him, or that he feared he would be raped by Inmate Stone. Id. Defendant Foulks had no knowledge of any particularized threat or fear felt by Plaintiff regarding Inmate Stone. Id. at 6.

4

On September 6, 2018, Plaintiff told escort officers, who are not named in this action, as well as Defendant Mikell, he feared for his life, was being intimated, and that his roommate had a knife. Id. But Defendant Mikell forced him to return to his cell and, later that day, Plaintiff was raped by Inmate Stone. Id. at 7.

Further, Defendant Odum was aware of an altercation from May 31, 2018, where Plaintiff harmed himself at the threat of his cellmate, Antonio Anderson. Id. at 6. Defendant Odum knew generally Plaintiff should not be housed with gang members based on this incident, but Defendant Odum was not aware with any particular issue of Plaintiff being housed with Inmate Stone. Id. Plaintiff did not speak with Defendant Odum about being housed with Inmate Stone on September 5, 2018, or any other time, and Defendant Odum was not aware of any particular threat or fear felt by Plaintiff regarding being housed with Inmate Stone. Id.

## DISCUSSION

**I.     Legal Standard**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted).

5

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the non-moving party's case or the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.     Plaintiff's Excessive Force Claim Fails

Defendants argue they are entitled to summary judgment because the undisputed material facts show Defendants did not violate Plaintiff's Eighth Amendment rights by using excessive force. Doc. 26-2 at 7–13.

### A.     Excessive Force Legal Standard

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and

6

a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). To satisfy the objective component, the inmate must show the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Subjectively, such "force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'" Burke v. Bowns, 653 F. App'x 683, 695 (11th Cir. 2016) (quoting Skritch v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002)); Pearson v. Taylor, 665 F. App'x 858, 863 (11th Cir. 2016) ("The 'core judicial inquiry' for an excessive-force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'") (quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). "Correctional officers in a prison setting can use pepper spray on an inmate, but there must be a valid penological reason for such a use of force." Williams v. Rickman, 759 F. App'x 849, 851 (11th Cir. 2019).

The Eleventh Circuit Court of Appeals has "identified five factors to help evaluate whether force was applied maliciously or sadistically." Pearson, 665 F. App'x at 863; Burke, 653 F. App'x at 695. The factors are: (1) the need for the exercise of force; (2) the relationship between the need for force and the force applied; (3) the extent of injury the inmate suffered; (4) the extent of the threat to the safety of staff and other inmates; and (5) any efforts taken temper the severity of a forceful response. Skelly v. Okaloosa Cnty. Bd. of Cnty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Any action taken should be viewed considering the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson v. McMillian,

7

503 U.S. 1, 6 (1992).  For example, use of an appropriate degree of force to compel compliance with a valid order is justified.  Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

### B. Defendant Mikell Is Entitled to Summary Judgment

Defendants argue Defendant Mikell's use of force in this case—pepper spray when Plaintiff refused to comply with orders to cooperate and be handcuffed—does not constitute excessive force or violate the Eighth Amendment.[2]

#### *1. The need for the application force.*

Here, the undisputed material facts show Plaintiff refused to comply with multiple orders and refused to be handcuffed to allow a roommate to enter his cell.[3]  Plaintiff does not dispute he was refusing to comply with orders.  It is well-settled that where an inmate refuses orders, prison officials may be permitted to use some force.  The Eleventh Circuit Court of Appeals has held where an inmate refuses to return to his cell, a prison official is justified in his use of some force.  Brown, 813 F.2d at 1189–90; see also Alday v. Groover, No. CV 212-108, 2014 WL 1320093, at

---

[2]  Plaintiff's claim is analyzed under the Eighth Amendment, which requires Plaintiff to prove both objective and subjective components.  For the reasons explained below, Plaintiff's claim fails to satisfy the subjective prong.  Therefore, the Court declines to analyze whether Defendant Mikell's use of force was objectively excessive.

[3]  Though Plaintiff did not respond to Defendants' Motion, in his Complaint, he contends he did not submit to orders to be handcuffed because he feared for his safety.  Even if this were to be accepted as true for purposes of summary judgment, Plaintiff's justification for refusing to comply the guard's instructions does not sway the analysis in this case.  Indeed, "prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out."  Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled in part on other grounds, as recognized by* Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).

8

*6 (S.D. Ga. Mar. 31, 2014) (noting plaintiff failed to follow officer's lawful commands and an "official need not wait until disturbances are dangerous before using force to restore order.") (citing Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)); Miles v. Jackson, 757 F. App'x 828, 830 (11th Cir. 2018) (finding a need for force where the inmate failed to comply with an officer's orders to go further into a cell and evaded attempts at compliance). There is no meaningful distinction between an inmate's refusal to return to his cell and Plaintiff's refusal to comply with orders regarding being handcuffed so that officers may enter his cell. In both instances, there is a refusal to comply with prison officials' orders regarding housing, presumably given to maintain order and safety within the prison. Plaintiff not only refused orders, but he also blocked off access to his cell with a mattress. Accordingly, there was some legitimate need for force based on Plaintiff's non-compliance with Defendant Mikell's orders, and this factor weighs in Defendant Mikell's favor.

### 2. *Relationship between the need for force and the force applied.*

The relationship between the need for force and the force applied also cuts in favor of Defendant Mikell. As explained above, Plaintiff's refusal to follow orders necessitated at least some use of force. The use of force by Defendant Mikell and the CERT officers was a single burst of pepper spray into Plaintiff's cell. Short bursts of pepper spray are "not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." Danley, 540 F.3d at 1307 (collecting cases). Pepper spray is often a reasonable alternative to other forms of physical force. Id. (citing Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002)). Consequently, this factor also cuts in favor of summary judgment for Defendant Mikell on Plaintiff's excessive force claim.

### 3.  *The extent of Plaintiff's injuries.*

The extent of Plaintiff's injuries weighs in Defendant Mikell's favor.  The extent of injury "is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied."  Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (citing Wilkins, 559 U.S. at 37).  While the resulting injury can be indicative, the key inquiry is the amount of force applied by Defendant, not the severity of the injury that resulted to Plaintiff.  Id. at 800–01 (citing Wilkins, 559 U.S. at 37).  Injury and force are "imperfectly correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  Wilkins, 559 U.S. at 38.

Here, there is no evidence Plaintiff suffered more than minor injuries.  Plaintiff only experienced mild pain and discomfort, typically associated with the use of pepper spray, and returned to normal after a couple days.  Indeed, pepper spray "is designed to disable a suspect without causing permanent physical injury."  Vinyard, 311 F.3d at 1348.  Accordingly, this factor also weighs in favor of summary judgment for Defendant Mikell.

### 4.  *The extent of the threat to the safety of staff and other inmates.*

Plaintiff was refusing an order at the time force was used.  An inmate's refusal to comply with orders creates a threat to the safety of staff.  Brockington v. Stanco, No. 5:14-cv-38, 2016 WL 4443204, at *5 (M.D. Ga. May 25, 2016) (citing Danley, 540 F.3d at 1308, and McClendon v. Smith, No. 7:12-CV-154, 2014 WL 575538, at *6 (M.D. Ga. 2014)).

Plaintiff's non-compliance posed a threat to the safety of staff and inmates in several ways.  First, the Defendants'—several prison guards—attention was diverted away from maintaining security throughout the facility to forcing Plaintiff to comply with orders.  Second, a

single prisoner's refusal to follow orders threatens to undermine officers' authority throughout a facility. Id. at *6. Finally, a prisoner's non-violent protestations can, potentially, escalate to physical resistance and officers are not required to wait for this escalation before using physical force. Id. at *6; Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) (explaining a prison guard "need not wait until disturbances reach dangerous proportions before responding"). Therefore, Plaintiff's actions constituted a threat of safety of the staff and inmates, and this factor cuts in favor of Defendant Mikell.

> 5. *Any efforts taken to temper the severity of a forceful response.*

Defendants took several steps to avoid using force. Defendant Mikell verbally ordered Plaintiff to comply with their orders multiple times and warned Plaintiff that if he refused to cooperate, force would be used. However, Plaintiff refused to comply with the orders and physically resisted Defendants' efforts by blocking access to his cell with a mattress. Defendant Mikell attempted to address Plaintiff's refusal to comply with orders first with verbal orders, warning Plaintiff continued refusal would result in use of force, and only then deploying pepper spray. The fact Defendant Mikell promptly ensured Plaintiff received medical care tempers the severity of the force used. Cockrell, 510 F.3d at 1312. Accordingly, this factor cuts in favor of Defendant Mikell.

In sum, even when viewing the undisputed material fact in the light most favorable to Plaintiff, Defendant Mikell is plainly entitled to summary judgment. Every factor used to evaluate whether force was applied maliciously or sadistically cuts in favor of Defendant Mikell and against Plaintiff. Because Plaintiff cannot satisfy the subjective component of an Eighth Amendment excessive force claim, summary judgment should be granted to Defendant Mikell. See Riggins v. Beseler, 568 F. App'x 850, 853 (11th Cir. 2014); Wilborn v. Graham, 1:15-cv-

4153, 2017 WL 9477636, at *9–10 (N.D. Ga. May 19, 2017); Scott v. Brown, 1:11-cv-1811, 2013 WL 4482498, at *6–7 (N.D. Ga. Aug. 16, 2013).  Accordingly, Defendant Mikell is entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim.

### C. Defendant Foulks Is Entitled to Summary Judgment

The extent of Defendant Foulks involvement is that he was in the same building when Plaintiff was pepper sprayed and eventually handcuffed.  While Plaintiff testified Defendant Foulks was involved in the use of force incident, Plaintiff's testimony cannot be credited.  Doc. 26-6 at 22–23, 29–30, 52–53.  Defendants submitted video recordings of the incident, and these video recordings show Defendant Foulks was not present when force was used.  Doc. 27.  Generally, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotations omitted) (quoting Tolan v. Cotton, 572 U.S. 651, ___ (2014)).  But in cases with a video in evidence, the Court "'view[s] the facts in the light depicted by the videotape.'"  Shaw, 884 F.3d at 1098 (quoting Scott v. Harris, 550 U.S. 372, 380–81 (2007)).  Moreover, in their statement of material facts, Defendants assert Foulks was not present at the time force was used.  Doc. 26-1 at 2–3.  As Plaintiff failed to respond and dispute this fact, this statement of material fact is deemed admitted.  Local R. 56.1; see Mann v. Taser Intern., Inc., 588 F. 3d 1291, 1302–1303 (11th Cir. 2009) (giving deference to interpretation of local rule which provides that if a "party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts with specific citations to evidence, or otherwise fails to state a valid objection to the material fact pursuant to Local Rule 56.1B(2), such fact is deemed admitted by the respondent.").

Considering the above, the undisputed material facts demonstrate Defendant Foulks was not personally involved in the use of force incident. Thus, even if Defendant Mikell had used excessive force, a finding not made, Defendant Foulks was not personally involved or otherwise causally connected to the use of force. Accordingly, Defendant Foulks is entitled to summary judgment on Plaintiff's excessive force claim.

### D.  Defendant Odum Is Entitled to Summary Judgment

Defendant Odum was not present when Plaintiff was pepper sprayed. To the extent Plaintiff's claim against Defendant Odum is related to Defendant Mikell and the CERT officers' use of force, such a claim fails. There is no evidence Defendant Odum ordered any use force. And further, excessive force was not used. Even if Defendants used excessive force, Defendant Odum would still be entitled to summary judgment because Defendant Odum cannot be held responsible under a theory of respondeat superior. "It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citations omitted). To hold a supervisory official or an employer liable, Plaintiff must demonstrate either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Id. (internal quotation marks and citation omitted) (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, the undisputed material facts show Defendant Odum did not participate in the events forming the basis of Plaintiff's excessive force claims.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Odum and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir.

1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper custom or policy . . . result[s] in deliberate indifference to constitutional rights." Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by* Randall, 610 F.3d at 701. Accordingly, Defendant Odum is entitled to summary judgment on Plaintiff's excessive force claim.

In sum, I **RECOMMEND** the Court **GRANT** summary judgment to Defendants on Plaintiff's Eighth Amendment excessive force claim. Because I have recommended the Court grant summary judgment to all Defendants on Plaintiff's excessive force claim, I decline to address Defendants' arguments for qualified immunity and those related to compensatory damages.

### III. Defendants Foulks and Odum Are Entitled to Summary Judgment on Plaintiff's Failure to Protect Claim

Defendants Foulks and Odum argue they are entitled to summary judgment on Plaintiff's Eighth Amendment failure to protect claim. Doc. 26-2 at 14–17.

#### A. Failure to Protect Legal Standard

The Eighth Amendment forbids the infliction of cruel and unusual punishment. U.S. Const. amend. VIII; Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010). The Eighth

Amendment "imposes a duty on prison officials" to "take reasonable measures to guarantee the safety of the inmates." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099–1100 (11th Cir. 2014). "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1319 (11th Cir. 2005) (citing Farmer, 511 U.S. at 825). However, prison officials are not automatically liable for "every injury suffered by one prisoner at the hands of another . . . ." Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312, 1320 (11th Cir. 2016) (citing Farmer, 511 U.S. at 834); Purcell, 400 F.3d at 1319.

"To survive summary judgment on a deliberate indifference failure-to-protect claim, 'a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" Caldwell, 748 F.3d at 1099 (quoting Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013)); see also Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (quoting Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995)).

## B. Defendant Odum Is Entitled to Summary Judgment

Assuming Plaintiff faced a substantial risk of serious harm, the undisputed material facts show Defendant Odum was not deliberately indifferent to that risk. A defendant's deliberate indifference to a serious risk has two components: one subjective and one objective. Caldwell, 748 F.3d at 1099; see Bowen, 826 F.3d at 1320–21. A prison official acts with deliberate indifference "when he actually (subjectively) knows that an inmate is facing a substantial risk of serious harm[.]" Rodriguez v Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007).

"[T]he subjective component" of the second element deals with "the [defendant's] actual knowledge that an inmate faced a substantial risk of serious harm . . . ." Caldwell, 748 F.3d at

1099; see Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010). "[T]he defendant 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Caldwell, 748 F.3d at 1099–1100 (quoting Farmer, 511 U.S. at 837); Bowen, 826 F.3d at 1320–21; Smith, 368 F. App'x at 14. "[T]he known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." Doe v. Ga. Dep't of Corr., 245 F. App'x 899, 903 (11th Cir. 2007) (quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990)).

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Bowen, 826 F.3d at 1321 (citing Farmer, 511 U.S. at 842). The "degree of specificity" of the facts subjectively known to the defendant is a relevant consideration in determining whether the defendant knew the risk was serious and the harm substantial. Id. at 1322; Caldwell, 748 F.3d at 1102. However, "[t]he trier of fact may . . . 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Bowen, 826 F.3d at 1321 (quoting Farmer, 511 U.S. at 842).

While Defendant Odum was aware Plaintiff should not generally be housed with gang members, this was the extent of his knowledge. There is no evidence showing Defendant Odum was aware Inmate Stone was a gang member, and even if Defendant Odum should have known Inmate Stone was gang-affiliated, this is not enough. Doe, 245 F. App'x at 902 ("Failure to protect from an objectively significant risk that should have been—but was not—perceived, is no infliction of punishment under the Eighth Amendment."). Similarly, there is no evidence showing Defendant Odum was aware of the complaints Plaintiff made to Defendant Mikell and

16

others that Inmate Stone posed a threat to him or that he feared for his safety. Indeed, Defendant Odum was not present when Plaintiff vocalized these concerns on September 5, 2018. To put it simply, Plaintiff never shared any concerns with Defendant Odum about sharing a cell with Inmate Stone, specifically, and Defendant Odum was not aware of any threat or fear felt by Plaintiff regarding Inmate Stone.

Thus, a reasonable juror could not infer, based on these limited communications about past dangers posed by gang members, Defendant Odum "actually knew of a substantial risk—that other inmates—would seriously harm [Plaintiff]." Caldwell, 748 F.3d at 1102 (citing Farmer, 511 U.S. at 842). Because Plaintiff has not demonstrated Defendant Odum was subjectively aware of a risk, Plaintiff cannot satisfy the second component. See Chatham v. Adcock, 334 F. App'x 281, 294 (11th Cir. 2009) (dismissing a failure to protect claim when there was "insufficient evidence in the record to allow the Court, or a jury, to second guess [the defendant's] assertion that she was not aware of a substantial risk of serious harm to Plaintiff"). Accordingly, Defendant Odum is entitled to summary judgment on Plaintiff's failure to protect claim.

  **C. Defendant Foulks Is Entitled to Summary Judgment**

Defendant Foulks is also entitled to summary judgment. Plaintiff informed Defendant Foulks he could not be housed with a gang member like Inmate Stone but did not provide any further information. He did not explain to Defendant Foulks whether he had previous issues with gang members or Inmate Stone or that he feared he would be raped by Inmate Stone. Foulks had no knowledge of any particularized threat or fear felt by Plaintiff regarding Inmate Stone.

Thus, like Defendant Odum, a reasonable juror could not infer, based on these limited communications about a general danger posed by Inmate Stone, Defendant Foulks "actually

17

knew of a substantial risk—that other inmates—would seriously harm [Plaintiff]." Caldwell, 748 F.3d at 1102 (citing Farmer, 511 U.S. at 842). Because Plaintiff has not demonstrated Defendant Foulks was subjectively aware of a risk, Plaintiff cannot satisfy the second component. See Chatham, 334 F. App'x at 294 (dismissing a failure to protect claim when there was "insufficient evidence in the record to allow the Court, or a jury, to second guess [the defendant's] assertion that she was not aware of a substantial risk of serious harm to Plaintiff"). Accordingly, Defendant Foulks is entitled to summary judgment on Plaintiff's failure to protect claim.

## CONCLUSION

Because Defendants are entitled to summary judgment, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Partial Summary Judgment and **DISMISS** Plaintiff's claims for excessive force against all Defendants and Plaintiff's failure to protect claim against Defendants Odum and Foulks. Plaintiff's failure to protect claim against Defendant Mikell remains pending.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 7th day of June, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA